UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**DEL D. LUDLAM**                                           **CIVIL ACTION NO. 25-0908**

                                                            **SECTION P**
**VS.**
                                                            **JUDGE TERRY A. DOUGHTY**

**OUACHITA CORRECTIONAL**                                   **MAG. JUDGE KAYLA D. MCCLUSKY**
**CENTER, ET AL.**

**REPORT AND RECOMMENDATION**

Plaintiff Del D. Ludlam, a prisoner at Ouachita Parish Correctional Center ("OCC") proceeding pro se and in forma pauperis, filed this proceeding on approximately June 23, 2025, under 42 U.S.C. § 1983. He names the following Defendants: OCC, Mrs. Green, Nurse Donna Norman,[1] Nurse Greer, and Nurse Wilson.[2,3]

For reasons that follow, the Court should dismiss: Plaintiff's claims against OCC and Mrs. Green; his claims that he was denied a doctor visit for his shingles; and his claims that he did not receive Valtrex three times daily. The Court should retain Plaintiff's claims that he did not receive wound care and that he has not received dental care against Nurse Norman, Nurse Greer, and Nurse Wilson.

---

[1] Plaintiff also refers to Nurse Norman as Lieutenant Norman.

[2] Plaintiff also refers to Nurses Greer and Wilson as, respectively, Corporal Greer and Corporal Wilson.

[3] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

**Background**

Plaintiff has had shingles since December 2024. [doc. # 1, p. 3]. He states that because of his shingles, he has internal pain and wounds which excreted blood and puss on his shirts. *Id.* In January 2025, he was incarcerated at OCC. *Id.*

On January 9, 2025, after he submitted a "sick call," Nurse Wilson "saw" him. [doc. # 7-1, p. 1]. Nurse Norman saw him on January 27, 2025. *Id.* He received Ibuprofen and Naproxen on February 4, 2025. *Id.* He received Ibuprofen on March 3, 2025. *Id.* He saw a physician on May 8, 2025, who prescribed Valtrex once daily. [doc. #s 7, p. 2; 7-1, p. 1]. On May 13, he received Ibuprofen and Naproxen. [doc. # 7-1, p. 1]. On May 22, 2025, he saw another physician, Dr. Lori Hamilton, who prescribed him "Valtrex 3X a day for 15 days." [doc. #s 7, p. 3; 7-1, p. 2]. On July 16, 2025, he received Ibuprofen and Naproxen. [doc. # 7-1, p. 2]. On July 30, 2025, he requested a physician to treat his shingles, and Nurse Greer responded that Plaintiff had "been seen and treated multiple times for this complaint." *Id.* On July 31, 2025, Nurse Greer informed Plaintiff that he would be referred to a physician again. *Id.* He saw a physician at OCC on August 5, 2025, who prescribed him Valtrex once daily. [doc. #s 7, p. 2; 7-1, p. 2].

Plaintiff claims that he submitted multiple "sick calls and grievances," but "all defendants" denied him a doctor visit. [doc. #s 1, p. 3; 7, p. 2]. He suggests that Mrs. Green denied him a visit because his condition "look[ed] better[,]" but he maintains that his pain is internal and thus not visible. [doc. # 1, p. 3]. He "believe[s] [he] should see a doctor once a month until" he is healed. [doc. # 7, p. 4].

Plaintiff claims that Nurse Norman "overrode" Dr. Hamilton's prescription for Valtrex thrice daily and instead adhered to an OCC physician's prescription for Valtrex once daily. [doc. # 7, p. 3]. Later, after Plaintiff returned to Dr. Hamilton, who again prescribed Valtrex three

times daily, OCC "honored" the prescription, and Plaintiff "start[ed] getting better." *Id.* He writes in his amended pleading, which he filed on approximately August 18, 2025, that "for about the last 2 weeks [he] finally stopped leaking blood and puss all over [the] left side" of his body. *Id.*

Plaintiff claims that he did not receive wound care for over six months. [doc. #s 1, p. 3; 7, p. 3]. He claims that all Defendants knew of his condition and of how "badly blood and puss would cover" his shirt, yet he did not receive wound care. [doc. # 7, p. 2]. He did not receive a clean T-shirt every day; he could only wash his shirts in a shower every other day. [doc. # 7, p. 3]. He states that "all 3 defendants" refused to see him or give him bandages, gauze, or creams, but they did advise him that he was healing and that he should stop scratching his wounds. *Id.* at 2, 4. As of approximately early August 2025, Plaintiff's wounds stopped bleeding and oozing puss. *Id.* at 2.

In his amended pleading, Plaintiff notes that his jaw was broken three years ago at OCC. [doc. # 7, p. 5]. He claims that his teeth have been breaking significantly in the last six months, and his jaw is not aligning, but he does not know if "this is related yet." *Id.* He does grit his "teeth a lot." *Id.* He claims, "O.C.C. medical same defendants say I can't be referred to [a] dentist or jaw specialist." *Id.* He adds, Doctor Hamilton "also recommended I see their dentist too again OCC denies. [sic]." *Id.*

For relief, Plaintiff seeks to enjoin Defendants to grant him a doctor visit, follow physicians' instructions, provide his medication, and provide wound care. [doc. # 1, p. 4]. He also seeks monetary compensation. *Id.*

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights

complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. OCC**

Plaintiff names OCC as a Defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24.

OCC does not qualify as a juridical person; accordingly, the Court should dismiss Plaintiff's claims against this entity.

**3. Medical Care**

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*,

511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

  A. <u>Denial of Doctor Visit</u>

Plaintiff claims that he submitted multiple "sick calls and grievances," but "all defendants" denied him a doctor visit. [doc. #s 1, p. 3; 7, p. 2]. He suggests that Mrs. Green denied him a visit because his condition "look[ed] better[,]" but he maintains that his pain is internal and thus not visible. [doc. # 1, p. 3]. He "believe[s] [he] should see a doctor once a month until" he is healed. [doc. # 7, p. 4].

Plaintiff, however, does not specify when he lacked a doctor visit. As above, he *did* meet with physicians on May 8, 2025, May 22, 2025, and August 5, 2025. That he did not meet with a physician once each month or as often as he desired does not amount to a claim of constitutional dimension. Rather, Plaintiff simply disagrees with the frequency with which he received care from a physician. Further, to the extent he claims that he should have received care from physicians rather than nurses, he does not raise a plausible claim because prisoners are not entitled to "the best [care] that money could buy . . . ." *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *see Kimble v. Correcthealth Jefferson, L.L.C.*, 2023 WL 3946437, at *2 (5th Cir. June 12, 2023) (finding no plausible claim where the plaintiff alleged that his facility's medical provider's reliance on nurses and nursing assistants "delayed his ability to meet with more 'educated' and 'qualified' health care professionals."); *Wilson v. Baucom*, 2023 WL 4288350, at *5 (5th Cir. June 30, 2023) (finding "none of the criteria to establish a credible" claim where the plaintiff was treated by a qualified mental health professional "instead of a doctor or some other more qualified health professional."). The Court should dismiss these claims.

B. <u>Failure to Adhere to Dr. Hamilton's Prescription</u>

Plaintiff claims that Nurse Norman "overrode" Dr. Hamilton's prescription of Valtrex three times daily and instead adhered to the OCC physician's prescription of Valtrex once daily. [doc. # 7, p. 3]. Later, after Plaintiff returned to Dr. Hamilton, who again prescribed Valtrex three times daily, OCC "honored" the prescription and Plaintiff "start[ed] getting better." *Id.*

Essentially, Plaintiff disagrees with the OCC physician's prescription for Valtrex once daily instead of thrice daily. "[E]ven if [one physician] did not follow the treatment recommendation of another physician, that does not establish deliberate indifference." *Ducksworth v. Macmurdo*, 809 F. App'x 249, 250 (5th Cir. 2020). Absent more, that one

8

physician did not follow another physician's recommendation "suggests nothing more than a difference in opinion as to the appropriate method of treatment under the circumstances." *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *see Blank v. Bell*, 634 F. App'x 445, 449 (5th Cir. 2016) (noting that prison physicians have "discretion whether to follow any medication prescriptions in [an inmate's/detainee's] hospital-discharge instructions"); *Weeks v. Collier*, 2023 WL 7703823, at *5 (5th Cir. Nov. 15, 2023); *Davis v. Univ. of Texas Med. Branch*, 209 F. App'x 446, 447 (5th Cir. 2006).

Finally, the Defendant nurses' implementation of the OCC physician's prescription does not remotely approach deliberate indifference. *See Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) ("There is no . . . claim just because an inmate believes that medical personnel should have attempted different diagnostic measures or alternative methods of treatment.").[5] While Plaintiff contends that the lower dose of Naproxen was ineffective, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alton*, 168 F.3d at 201; *see Vessell v. Myles*, 781 F. App'x 355 (5th Cir. 2019) ("While Vessell argues that he continued to experience pain and swelling, Myles's unsuccessful treatment and Vessell's disagreement with the treatment are insufficient to demonstrate deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) (finding no deliberate indifference where medical staff responded to the plaintiff's complaints and provided

---

[5] *See also Shockley v. Fox*, 444 Fed. Appx. 36, 37-38 (5th Cir.2011) (upholding the dismissal of a claim that prison officials were deliberately indifferent where they did not fill a narcotic prescription because of prison policy but instead offered the inmate other medications); *Lee v. Hennigan*, 98 F. App'x 286, 288 (5th Cir. 2004) ("The fact that the defendants gave Lee Tylenol contravenes his allegations of indifference."); *Sanford v. Tarrant Cty. Sheriff's Dep't*, 628 F. App'x 301, 302 (5th Cir. 2016) ("Sanford's complaint that he received only ibuprofen for pain amounts to a mere disagreement with medical treatment, which does not constitute a constitutional violation.").

consistent care and medication, even though the plaintiff disagreed with the extent and form of treatment). The Court should dismiss these claims.

### C. Lack of Wound Care

Plaintiff claims that he did not receive wound care for over six months. [doc. #s 1, p. 3; 7, p. 3]. He claims that Defendants Norman, Greer, and Wilson knew of his condition and of how "badly blood and puss would cover" his shirt, yet he did not receive wound care. [doc. # 7, p. 2]. He did not receive a clean T-shirt every day; he could only wash his shirts in a shower every other day. [doc. # 7, p. 3]. He alleges that "all 3 defendants" refused to see him or give him bandages, gauze, or creams, but they did inform him that he was healing and that he should stop scratching his wounds. *Id.* at 2, 4. As of approximately early August 2025, Plaintiff's wounds stopped bleeding and oozing puss. *Id.* at 2.

If construed strictly, Plaintiff's allegations would fall short of a constitutional claim. For instance, Nurses Norman, Greer, and Wilson *did* provide him medical care for his shingles, giving him Ibuprofen and Naproxen, referring him to multiple physicians, advising him to stop scratching his wounds/sores,[6] and reassuring him that his wounds were healing. Moreover, Plaintiff's wounds *did* heal.[7] [doc. # 7, p. 2]. Arguably, Plaintiff merely disagrees with the care he did receive. *See Parrott v. Sizemore*, 2022 WL 2072866, at *2 (5th Cir. June 9, 2022) (unpub.) ("Parrott's pleadings, which relate the medical care he received, contradict his allegation that Sizemore did nothing to ensure he received medical treatment. Specifically, Parrott states

---

[6] Providing advice constitutes medical treatment. *See Petzold v. Rostollan*, 946 F.3d 242, 250 (5th Cir. 2019) ("Rostollan's instruction for Petzold to ice his ankle was medical treatment.").

[7] Plaintiff appears to concede that he did not know the extent of his wounds because they were on his back where he could not see them. *Id.*

that he: was prescribed and provided various pain medications; was ordered to restrict his movement; and was scheduled, three separate times, for appointments with an orthospine clinic in Galveston and that he saw an orthopedic resident there.").[8]

However, "a *pro se* complaint is to be construed liberally[.]" *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). And "[w]e construe [] plaintiffs' complaints in the light most favorable to them . . . ." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

Construing Plaintiff's allegations liberally and in his favor at this early stage of the proceeding, the Court should retain the claims. While Plaintiff received medical treatment for some symptoms of his shingles, he allegedly did not receive any medical care for his wounds/sores for over six months.[9] During the months he lacked bandages, gauze, and/or creams, he excreted blood and puss from his wounds, which would cover his shirts. His shirts were "very infected with blood and puss[,]" which was "extremely horrible" according to Plaintiff. [doc. # 7, p. 3]. He adds that his uncovered wounds/sores were exposed to a "very unsanitary" environment in the facility.[10] [doc. # 1, p. 3]. He also claims that although Norman,

---

[8] *See also Petzold*, 946 F.3d at 250 ("[B]ecause medical treatment was provided, even if it was . . . based on a perfunctory and inadequate evaluation, it was not denied."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) (finding no deliberate indifference where medical staff responded to the plaintiff's complaints and provided consistent care and medication, even though the plaintiff disagreed with the extent and form of treatment); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992) (finding that an inmate received adequate care, even though the treatment may not have been the best, and that any deficiencies in treatment were minimal; moreover, the plaintiff's continuing pain, in and of itself, did not demonstrate that a constitutional violation occurred).

[9] *See Ford v. Anderson Cnty., Texas*, 102 F.4th 292, 309 (5th Cir. 2024) ("While Dr. Corley did treat Newsome's immediate symptom of gas with anti-gas medication, Plaintiffs have presented evidence that he did not treat Newsome for Addison's disease. Responding to a serious medical issue with such a cursory level of care may still constitute deliberate indifference.").

[10] Of indefinite relevance at present, Plaintiff also mentions that he has human immunodeficiency virus (HIV). [doc. # 7, pp. 2, 3].

11

Greer, and Wilson knew of his condition and of how "badly blood and puss would cover" his shirts, they refused to provide *any* wound care. [doc. # 7, p. 2]. Further, he claims that Nurse Norman refused to follow Dr. Hamilton's May 22, 2025, instructions to provide him "wound care" and to send him to a dermatologist. [doc. #s 7, p. 3; 7-1, p. 2]. *See generally Est. of Henson v. Krajca*, 440 F. App'x 341, 344 (5th Cir. 2011) ("We have found evidence of deliberate indifference where jail nurses knew of the inmate's medical needs but ignored doctors' explicit treatment orders to meet those needs.").

It is unclear whether Defendants' decisions to forego bandages, gauze, and/or creams were the products of indifference or of professional judgment (for instance, to avoid covering the wounds so they could heal).[11] But construing the claims liberally, Plaintiff plausibly alleges that he had a serious medical need and that Defendants Norman, Greer, and Wilson knew of a substantial risk of serious harm yet responded with deliberate indifference.

D. <u>Dental Care</u>

Plaintiff's jaw was broken three years ago at OCC. [doc. # 7, p. 5]. He claims—for the first time in his amended pleading—that his teeth have been breaking significantly in the last six months and his jaw is not aligning, but he does not know if "this is related yet." *Id.* He has at least three "significantly" broken teeth and a "bad cavity." *Id.* He describes his dental ailments as unbearable. *Id.*

Plaintiff writes, "Doctor Lori Hamilton . . . also recommended I see their dentist too again OCC denies. [sic]." *Id.* He claims, "O.C.C. medical same defendants say I can't be referred to [a] dentist or jaw specialist." *Id.* He suggests that Norman, Greer, or Wilson told him

---

[11] It is also unclear whether Plaintiff's rash/sores leaked because he transgressed the nurses' instructions to stop scratching.

that he will "just have to live with it!" *Id.*

Construed liberally and in his favor, the Court should retain these claims against Defendants Norman, Greer, and Wilson. While the claims are not paragons of precision, Plaintiff plausibly alleges that he has serious medical needs—significantly broken teeth, unbearable pain, a misaligned jaw, and a bad cavity—that Norman, Greer, and Wilson know of his condition because he submitted sick calls to them concerning his dental needs, and that they refused to refer him to a dentist or similar specialist and otherwise refused treatment, informing him that he would "just have to live with it[.]" Further, the Ddefendant nurses allegedly failed to follow Dr. Hamilton's recommendation that Plaintiff receive treatment from a dentist.[12]

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Del. D. Ludlam's claims against OCC and Mrs. Green, claims that he was denied a doctor visit for his shingles, and claims that he did not receive Valtrex three times daily be **DISMISSED WITH PREJUDICE** as legally frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or

---

[12] *See Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999) (prisoner's allegations that a physician and nurses ignored urgent and repeated requests for immediate medical treatment for his broken jaw and excruciating pain stated a claim); *Est. of Henson v. Krajca*, 440 F. App'x 341, 344 (5th Cir. 2011) ("We have found evidence of deliberate indifference where jail nurses knew of the inmate's medical needs but ignored doctors' explicit treatment orders to meet those needs."); *Delaughter v. Woodall*, 909 F.3d 130, 138 (5th Cir. 2018) ("Delaughter's claim arises from the fact he has yet to receive a prescribed course of treatment; it does not arise from his subjective opinion of the sufficiency of his medical treatment that is either contradicted or unsupported by medical professionals.").

response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 2nd day of September, 2025.

_____
Kayla Dye McClusky
United States Magistrate Judge